IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MARLENE HYLTON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>TITLEMAX OF VIRGINIA, INC.,<br><br>  Defendant. | CIVIL ACTION NO.: 4:21-cv-163 |

**O R D E R**

Presently before the Court is Defendant Titlemax of Virginia, Inc.'s ("Titlemax") Motion for Summary Judgment as to the individual claim asserted by Plaintiff Marlene Hylton. (Doc. 65.) Hylton brought this action under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, alleging that Titlemax violated the TCPA when it repeatedly called her and members of a class of similarly situated persons using a prerecorded voice without their prior express consent. (Doc. 51.) The Court bifurcated discovery, (doc. 36), and, after the parties completed discovery with respect to Hylton's individual TCPA claim, Titlemax filed the at-issue Motion, (doc. 65). The issues have been fully briefed. (Docs. 65-1, 66, 70.) For the reasons stated below, the Court **DENIES** Titlemax's Motion. (Doc. 65.)

## BACKGROUND

**I.   Factual History**

This action arises out of calls that Titlemax made to a mobile phone number that had been assigned to an individual named "Jennings," who applied for and received a motor vehicle title loan from Titlemax in August 2018.  (See doc. 51 (Second Amended Complaint).)  In Jennings' credit application, he consented to Titlemax contacting him regarding his account by calling his cell phone number "with an auto dialer or pre-recorded message."  (Doc. 65-4, p. 5.)  Jennings' application listed his cell phone number as "XXX-XXX-7270" (the "7270 Number").  (Id. at p. 2.)   Additionally, Jennings agreed to inform Titlemax "of any changes to the information contained in [his] Credit Application throughout the course of the application process and business relationship with [Titlemax]."   (Id. at p. 5.)   At some point, however, Jennings discontinued his cell phone number without notifying Titlemax that he had done so.[1]  (Doc. 65-3, p. 3; see doc. 66-2, pp. 3–4 (indicating that all account services expired on January 1, 2019).)  Jennings never provided Titlemax a different telephone number for it to contact him regarding his account.  (Doc. 66-1, p. 4.)

In January 2019, Titlemax called the 7270 Number three times and dispositioned the 7270 Number as an "Invalid Number."  (Doc. 66-4, p. 3.)  According to Jose Urbaez Cotto, the Senior Regulator Legal Manager for TMX Finance Corporate Services, Inc.,[2] the "Invalid Number" disposition "is reserved for calls that do not connect to or ring the intended number, but

---

[1]  Hylton's Response to Titlemax's Statement of Material Facts denies this fact. (Doc. 66-1, p. 3.) However, Hylton failed to cite to any evidence in the record controverting this fact.  Furthermore, the materials that Hylton *did* cite are irrelevant.  (See id.)  Thus, because Hylton failed to address this fact as required by Federal Rule of Civil Procedure 56(c), the Court considers it undisputed pursuant to Rule 54(e).  See Fed. R. Civ. P. 54(e) (a court may consider a fact undisputed for purposes of summary judgment "[i]f a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c)").

[2]  TXM Finance Corporate Services, Inc., is a corporate service entity for Titlemax.  (Doc. 65-3, p. 1.)

instead trigger an automated intercept recording indicating the call cannot be completed." (Doc. 65-3, p. 3.)  Titlemax also attempted to contact Jennings using the Number at various points throughout June 2019–February 2021.  (Doc. 66-1, p. 4.)  Hylton received some of these communications because Jennings' cellular provider had reassigned the 7270 Number to her after Jennings discontinued his cellular services.  (Id.)  After receiving the calls, Hylton called Titlemax on five occasions.  (Id.; see doc. 65-5.)  According to transcripts of the calls, in the majority of the calls, Hylton (without identifying herself) requested the full name of the Titlemax representative with whom she was speaking and then hung up when the representative refused to provide more than his or her first name.  (See doc. 65-5, pp. 3–5.)  Pertinently, during the fifth call, Hylton stated, "You guys keep calling my number every day . . . to resolve a debt[.] . . . I don't know who this person is your [sic] looking for.  But, it's not me."  (Id. at p. 6.)  Hylton also stated that the calls indicated they were intended for an individual named "Jennings."  (Id.)  Notably, however, Hylton never informed Titlemax that she had received the calls on the 7270 Number nor requested that Titlemax stop calling the 7270 Number.  (See generally doc. 65-5.)  Additionally, none of Titlemax's calls to Hylton at the 7270 Number resulted in a "Third Party– DNC" disposition, (doc. 66-1, p. 9), which is used for calls received by someone other than the customer who provided express consent, (doc. 65-3, p. 3).

## II.     Procedural History

On behalf of herself and members of a "Pre-Record[ed] Call Class,"[3] Hylton filed this action on March 12, 2021, (doc. 1 (Complaint)), alleging that Titlemax violated the TCPA by "sending . . . artificial or prerecorded voice messages to the cellular telephones of [Hylton] and

---

[3] Hylton's proposed Prerecorded Call Class includes "[a]ll persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more pre-recorded calls on their cellular telephone from or on behalf of TitleMax after TitleMax's records reflect that TitleMax was calling an 'invalid number'."  (Doc. 51, p. 4.)

3

members of the Prerecorded Call Class without their prior express consent," (doc. 51, p. 7). On Titlemax's motion, the Court bifurcated discovery into two phases: (1) discovery on the merits of Hylton's individual claims, and (2) discovery related to the alleged class action. (Doc. 36.) After the Parties completed the first phase of discovery, Titlemax filed the at-issue Motion for Summary Judgment on Hylton's individual claim. (Docs. 65, 65-1.) Hylton filed a Response, (doc. 66), and Titlemax filed a Reply, (doc. 70).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the

4

pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

The TCPA prohibits, in pertinent part, any person within the United States from "mak[ing] any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). With respect to her individual claim, Hylton alleges that Titlemax violated the TCPA by calling her at the 7270 Number using "artificial or prerecorded voice messages" without her prior express consent. (Doc. 51, p. 7; see id. at pp. 3–4.) Titlemax argues that it is entitled to summary judgment as to Hylton's individual claim because (1) "it had prior express consent to

contact [the 7270 Number]" and (2) "it reasonably relied upon such consent in continuing to contact the [7270 Number]."  (Doc. 65-1, p. 1; see id. at pp. 7–14.)  According to Titlemax, it was reasonable to contact the 7270 Number because it neither received notice that the 7270 Number had been reassigned to Hylton nor was "made aware that its communications . . . were being directed to and/or . . . received by someone other than Jennings."  (Doc. 65-1, p. 12.)  Hylton, on the other hand, contends that summary judgment is unwarranted because she is the "called party" under the TCPA and she did not consent to Titlemax contacting her.  (See doc. 66, pp. 4–6.)  Additionally, Hylton argues that the TCPA is a strict liability statute, and, thus, Titlemax's purported reasonable reliance on Jennings' prior written consent to receive automated calls at the 7270 Number is irrelevant.  (Id. at pp. 1, 6–10.)

I. **Jennings' Consent for Titlemax to Call the 7270 Number Is Inapposite because Hylton is the "Called Party" under Section 227.**

Titlemax argues that summary judgment is warranted because Jennings consented to Titlemax calling the 7270 Number concerning his account.  (Doc. 65-1, pp. 7–9.)  This argument fails.  Section 227(b)(1)(A) only exempts from the TCPA's coverage calls "made with the prior express consent of the *called party*."  47 U.S.C. § 227(b)(1)(A) (emphasis added).  In Osorio v. State Farm Bank, F.S.B., the United States Court of Appeals for the Eleventh Circuit explicitly held that the term "called party" refers to the current subscriber to that number—i.e., the person or entity assigned to the number at the time the call is made—*not* the "intended recipient" of the call.  746 F.3d 1242, 1250–52 (11th Cir. 2014); see Breslow v. Wells Fargo Bank, 755 F.3d 1265, 1267 (11th Cir. 2014) (recognizing Osorio's holding that "called party" means "the subscriber to the cell phone service").  In reaching that decision, the court in Osorio adopted the Seventh Circuit Court of Appeals' reasoning in Soppet v. Enhanced Recovery Co., 679 F.3d 637 (7th Cir. 2012).  746 F.3d at 1251–52.  In Soppet, Judge Easterbrook discerned from the repeated

6

use of the term "called party" in Section 227—as opposed to a term such as "intended recipient"—that "[c]onsent to call a given number must come from its current subscriber . . . and thus any consent previously given, lapses when [the number] is reassigned" by the cellular provider. 679 F.3d at 640–41; see id. at 640 (defining "current subscriber" as "the person who pays the bills or needs the line in order to receive other calls").

Although Jennings consented to receiving calls from Titlemax at the 7270 Number in his credit application, it is undisputed that, after he discontinued the 7270 Number, his cellular provider reassigned it to Hylton. (Doc. 66-1, p. 4.) Subsequently, Titlemax called Hylton—whom Titlemax concedes did not consent to calls from it, (see doc. 65-1, p. 9)—using the 7270 Number, (doc. 66-1, p. 4; see doc. 66-4, p. 3). Thus, for purposes of her claims, Hylton is the "called party" because she was the current subscriber to the 7270 Number when the at-issue calls were made; the fact that *Jennings* was the *intended* recipient of the calls is inapposite for purposes of Section 227(b)(1)(A). As such, it is *Hylton's* consent—not Jennings'—that matters for purpose of Section 227(b)(1)(A). See Morgan v. Orlando Health, Inc., No. 6:17-cv-1972-Orl-41GJK, 2019 WL 7423512, at *3 (M.D. Fla. Oct. 14, 2019) ("[U]nder the plain language of the [TCPA], Defendants were prohibited from calling the . . . Number without prior express consent of the subscriber—Plaintiff."). Accordingly, summary judgment is not warranted based merely on 47 U.S.C. § 227(b)(1)(A) and the fact that *Jennings* consented to Titlemax calling the 7270 Number.

## II.     Reasonable Reliance is Not a Defense to Hylton's TCPA Claims

Despite the fact that Titlemax made automated calls to Hylton without her consent, Titlemax maintains that summary judgment is appropriate because it reasonably relied upon Jennings' consent to call the 7270 Number when it made the calls to Hylton. (Doc. 65-1, pp. 9–

14.) According to Titlemax, its reliance on Jennings' consent was reasonable because it never received notice (from Jennings, Hylton, or anyone else) that the 7270 Number had been reassigned to Hylton, and Hylton never instructed it to cease communications with the 7270 Number. (Id. at pp. 12–13.)

The parties vehemently disagree about whether a reasonable reliance defense is available for TCPA claims. (See generally docs. 65-1, 66, 70.) Specifically, they dispute whether a caller may avoid liability for making automated calls to someone who did not consent by showing that the caller reasonably relied upon the intended recipient's prior express consent. (Id.) Titlemax contends that the D.C. Circuit's decision in ACA International v. FCC, 885 F.3d 687 (D.C. Cir. 2018), as well as recent rules promulgated by the Federal Communication Commission ("FCC"), have created a "reasonable reliance regime for assessing the potential TCPA liability of a caller who calls a reassigned number." (Doc. 70, p. 7; see id. at pp. 2–10.) Hylton, on the other hand, argues that "reasonable reliance is not a valid defense" to claims brought under the TCPA. (Doc. 66, pp. 4–10.) According to Hylton, the TCPA is a strict liability statute for which there is no "reasonable reliance" defense, and a caller's reliance upon the intended recipient's prior consent to call a phone number that has been reassigned to a non-consenting party is only relevant—if at all—in the context of damages. (Id. at pp. 5–7 (collecting cases holding that reasonable reliance or good faith are relevant only as to willfulness or treble damages).)

For the reasons stated below, the Court finds that a caller's reasonable reliance upon the prior express consent of an intended recipient whose number was reassigned to the called party is not a defense to TCPA liability. Accordingly, summary judgment is not warranted on the basis of Titlemax's second (and final) argument.

### A. The Text of the TCPA, as Interpreted by the Eleventh Circuit and Other Courts, Cut Against a Reasonable Reliance Defense.

Numerous courts confronting similar requests to recognize a reasonable reliance or "good faith" defense to TCPA claims have declined to do so because it would be inconsistent with the text of the TCPA. Although the Eleventh Circuit has yet to address this precise question, in Osorio, as discussed supra, the court adopted the Seventh Circuit's reasoning in Soppet and held that a call's intended recipient is *not* a "called party" under the TCPA where the called number has been reassigned from the consenting party to a third party. 746 F.3d at 1250–52. Similarly, in N.L. by Lemos v. Credit One Bank, the Ninth Circuit Court of Appeals, citing Osorio and Soppet, recently determined that the plain language of Section 227 belies the notion that a caller's reliance on the intended recipient's consent exempts it from liability for calling a reassigned number. 960 F.3d 1164, 1167–69 (9th Cir. 2020). Instead, the Ninth Circuit determined, a caller's "intent to call a customer who had consented to its calls does not exempt [it] from liability under the TCPA when it calls someone else who did not consent." Id. at 1167. Pertinently, like Soppet, the Court in N.L. by Lemos noted that Section 227(b)(1)(A) makes no reference to the caller's "intended" recipient and that the use of the term "called party" throughout Section 227 suggests that the TCPA only exempts calls made with the consent of the current subscriber of the number dialed. Id. at 1168–69; see Soppett, 679 F.3d. at 640–41. Additionally, the Ninth Circuit determined that Congress' findings support interpreting "called party" in a way that imposes strict liability for automated calls to numbers that had, unbeknownst to the caller, been reassigned to someone else. N.L. by Lemos, 960 F.3d at 1170. Specifically, the court stated that "Congress appears to equate the 'called party' with the 'receiving party'" because, when it enacted the TCPA, Congress found that "[b]anning such automated or prerecorded telephone calls to the home, *except when the receiving party consents to receiving*

9

*the call* . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Id. (emphasis in original) (citing Pub. L. No. 102-243 § 2(12)).

District courts within and outside the Eleventh Circuit have similarly refused to adopt a reasonable reliance approach in cases involving a reassigned number. Similar to the court in N.L. by Lemos, these courts reason that the text of the TCPA, as interpreted by the Courts of Appeals, weighs in favor of strict liability. For example, in Morgan v. Orlando Health, Inc., the United States District Court for the Middle District of Florida held that, in light of the Eleventh Circuit's narrow reading of the term "called party" in Breslow, "good-faith is not a defense" to TCPA claims brought under Section 227(b)(1)(A)(iii). 2019 WL 7423512, at *4. The Court reasoned that, "[a]lthough the Breslow Court did not explicitly address a good faith defense, it unequivocally determined that because the defendant did not obtain consent from the 'called party' as required by the TCPA, the plaintiff was entitled to summary judgment on the issue." Id. (citing Breslow, 755 F.3d at 1267). Similarly, the United States District Court for the Western District of North Carolina held earlier this year that "there is no basis to conclude that the TCPA affords . . . a reasonable reliance or good faith defense." Ellerby v. Liberty Univ., Inc., No. 5:21-cv-00093-KDB-DCK, 2022 WL 715577, at *5 (W.D.N.C. Mar. 9, 2022) (citing Davis v. Diversified Consultants, Inc., 36 F. Supp. 3d 217, 223–24 (D. Mass. 2014) ("'The TCPA is essentially a strict liability statute' and 'does not require any intent for liability except when awarding treble damages.'")). The Ellerby court reasoned that "the TCPA's language is consistent with a strict liability statute that does not require intent for liability," and, citing Osorio and N.L. by Lemos, noted that "every circuit court to opine on the issue has concluded that the term 'called party' refers to the individual that actually receives the calls, as opposed to the 'intended party' of those calls." Id. at *3, 5.

10

The Court, like those cited above, is persuaded that the plain text of the TCPA—as interpreted by the Eleventh Circuit in Osorio and other circuit courts—cuts against recognizing a reasonable reliance defense in cases involving reassigned numbers. Nothing in the text of the statute creates a safe harbor in such instances, and it would be inappropriate for this Court to construct one. Moreover, a judicially created reasonable reliance defense would contradict the Eleventh Circuit's express rejection of the argument that "called party" denotes an intended recipient. Through that decision, the Eleventh Circuit strongly indicated that the TCPA is a strict liability statute, and, therefore, a caller cannot avoid liability by showing that its intended recipient had consented to receiving calls. Indeed, albeit in a slightly different context, the Eleventh Circuit has recognized that "[i]ntent is not a prerequisite to liability under the [TCPA]," and is only relevant when awarding treble damages. See Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1311 (11th Cir. 2008) (quoting Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 882 (8th Cir. 2005)).

> B. **Neither the D.C. Circuit's Decision in ACA International nor the FCC's Recent Rulemaking Establishes a Reasonable Reliance Defense.**

Titlemax does not meaningfully dispute that the text of the TCPA does not support a reasonable reliance defense. Rather, Titlemax principally relies on the D.C. Circuit's decision in ACA International and recent rules promulgated by the FCC, which, Titlemax contends, have created a "reasonable reliance regime." (Doc. 70, p. 7; see id. at pp. 2–10; see also doc. 65-1, pp. 9–14.) Putting aside the question of whether the FCC's rulemaking could change the plain meaning of the statute, Titlemax is incorrect regarding the influence that rulemaking would have on Hylton's claims.

### (1) The FCC's 2015 Ruling & <u>ACA International v. FCC</u>

In 2015, the FCC issued a declaratory ruling (the "2015 Ruling") which addressed, *inter alia*, "whether a caller making a call subject to the TCPA to a number reassigned from the consumer who gave consent for the call to a new consumer is liable for violating the TCPA." <u>In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 30 FCC Rcd. 7961, 7999 ¶ 71 (2015). In the 2015 Ruling, the FCC—like the Eleventh Circuit in <u>Osorio</u>—interpreted the term "called party" to mean the "subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call." <u>Id.</u> at ¶ 73. Additionally, the FCC determined that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber," <u>id.</u> at ¶ 72 and, thus, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based," <u>id.</u> at ¶ 73. Notably, however, the FCC opted to allow a caller without knowledge of a reassignment to make one liability-free call to the reassigned number in order to gain actual or constructive knowledge of the reassignment. <u>Id.</u> at ¶¶ 72, 73 n.265, 85. The 2015 Ruling indicates that the one-call safe harbor was designed to effectuate the "reasonable reliance" principles which the FCC found inherent in the TCPA's approval of calls made with "prior express consent." <u>Id.</u> at ¶ 90 n.312.

In <u>ACA International v. FCC</u>, a Hobbs Act case,[4] the D.C. Circuit addressed challenges to various components of the 2015 Ruling. 885 F.3d 687, 694–714. With respect to reassigned numbers, the court recognized that the FCC "consistently adopted a 'reasonable reliance' approach when interpreting the TCPA's approval of calls based on 'prior express consent,' including as the justification for allowing a one-call safe harbor when a consenting party's

---

[4] Direct review of final FCC orders is governed by the Hobbs Act, which permits "[a]ny party aggrieved by [a] final order" to petition for review of that order. 28 U.S.C. § 2344.

number is reassigned." Id. at 707.  Yet, the court determined that the "one-call safe harbor" was arbitrary and capricious because "no cognizable conception of 'reasonable reliance' supports the [FCC's] blanket, one-call-only allowance." Id. (noting, among other issues, that the FCC "gave no explanation of why reasonable-reliance considerations would support limiting the safe harbor to just one call or message").  Because the court feared that excising solely the one-call safe harbor would "mean that a caller is strictly liable for *all* calls made to the reassigned number"—a result the court was unsure the FCC would have adopted[5]—it set aside the FCC's "treatment of reassigned numbers as a whole." Id. at 708–09; see Orlando Health, 2019 WL 7423512, at *3 ("[T]he [ACA International] court refused to allow the remainder of the applicable ruling to stand without the safe harbor because it was not entirely convinced the FCC would have done so.").

Titlemax concedes that ACA International "left open the question of whether a caller could reasonably rely on express consent provided by a previous subscriber, or, alternatively, whether a strict liability standard should apply." (Doc. 70, p. 4.)  Nonetheless, Titlemax appears to argue that ACA International supports a reasonable reliance approach because the D.C. Circuit recognized therein that the FCC incorporated principles of reasonable reliance in the 2015 Ruling.  (See id. (stating that "the D.C. Circuit plainly outlined its belief as to the FCC's position and intent" and citing portions of the ACA International opinion concerning, *inter alia*, the FCC's statement in the 2015 Ruling that it interpreted "the caller's ability to rely on express consent" to mean "reasonable reliance").)  The Court is not persuaded.  Titlemax is correct that, as noted above, ACA International recognized that the FCC's 2015 Ruling had incorporated

---

[5] The court noted that, in the 2015 Ruling, the FCC stated that it "could have interpreted the TCPA to impose a traditional strict liability standard," i.e., "a 'zero call' approach," yet it opted, instead, to create a one-call safe harbor to avoid a "result that severe." ACA Int'l, 885 F.3d at 708 (quoting 30 FCC Rcd. at 8009, ¶ 90 n.312).

13

"reasonable reliance" principles and had declined to interpret the TCPA to impose a strict liability standard. 885 F.3d at 705–07. Yet, as aptly stated by our sister court, "the ACA International court did not express any opinion on whether the FCC's reasonable reliance approach was proper. Rather, the court simply held that the one-call safe harbor approach taken in the 2015 [D]eclaratory [R]uling failed to implement a reasonable reliance approach to the extent the FCC intended to take one." Morgan v. Adventist Health Sys./sunbelt, Inc., No. 6:18-cv-1342-Orl-78DCI, 2020 WL 13369055, at *2 (M.D. Fla. Jan. 13, 2020) (internal citations omitted). Thus, the D.C. Circuit, in ACA International, "did not adopt a reasonable reliance test or exception when dealing with reassigned numbers," id., and "nothing in the [ACA International] opinion approves of or recognizes [such an] approach," Orlando Health, 2019 7423512, at *3. Indeed, as the Eleventh Circuit recognized, ACA International "wiped the slate clean" with respect to the FCC's treatment of reassigned numbers in the 2015 Ruling. Glasser v. Hilton Grand Vacations Co., 948 F.3d 1301, 1310 (11th Cir. 2020). Therefore, contrary to Titlemax's position, the fact that ACA International "outlined its belief as to the FCC's . . . intent" to incorporate reasonable reliance principles in the 2015 Ruling is not dispositive. (Doc. 70, p. 4.)

Even ignoring the fact that the FCC's reassignment scheme was set aside, the fact that the 2015 Ruling recognized an "extremely limited one-call safe harbor exhibits a *reluctance* to allow the sweeping reasonable reliance approach advocated for by [Titlemax]." Orlando Health, 2019 WL 7423512, at *3 (emphasis added). Moreover, Titlemax apparently ignores that the 2015 Ruling explicitly states that "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." 30 FCC Rcd. at 7999 ¶ 73. Thus, even if the FCC's 2015

14

Ruling were applicable (which it is not), it cuts against recognizing the broad defense Titlemax seeks as to Hylton's claims.

### (2) Post-ACA International Rulemaking by the FCC

Titlemax next argues that the FCC's actions since ACA International establish a reasonable reliance defense. (See doc. 65-1, p. 11–12; doc. 70, pp. 5–6.) In 2018, the FCC issued an order (the "2018 Order") which approved the creation of a Reassigned Numbers Database ("RND") and established a narrow safe harbor for callers who use the database. See In re Advanced Methods to Target & Eliminate Unlawful Robocalls, 33 FCC Rcd. 12024, 12043–45 (2018). The safe harbor, codified at 47 C.F.R. § 64.1200(m), prohibits liability for calling a reassigned number if the caller proves that they accessed the most recent RND, and the RND erroneously indicated that the number was still assigned to a person from whom the caller had received prior express consent. Id.

Titlemax contends that the "creation, purpose, and implications of the RND do not—and cannot—align with [a] strict liability interpretation of the TCPA." (Doc. 70, p. 6.) The Court disagrees. It is apparent from the 2018 Order that the RND is meant to help callers avoid violating the TCPA by calling a reassigned number in the first place, not to insulate them from liability after they have already done so. For example, the 2018 Order states that the RND is designed to provide a "*means to come into compliance*" with the TCPA. 33 FCC Rcd. at 12045, ¶ 58 (emphasis added). Similarly, the FCC's website states that "[c]allers can use the [RND] to determine whether a telephone number may have been reassigned *so they can avoid calling customers* who do not want to receive the calls." Federal Communications Commission, Reassigned Numbers Database, https://www.fcc.gov/reassigned-numbers-database (updated Apr. 11, 2022) (emphasis added). Accordingly, the FCC's development of a safe harbor for callers

who use the RND is not inconsistent with a strict liability approach for calls made *without* consulting the RND.  Furthermore, the fact that the FCC created a narrow safe harbor solely for RND users suggests that the FCC endorses (and seeks to incentivize) reasonable reliance upon *the RND*, not an intended recipient's prior express consent.  Indeed, the 2018 Order indicates that the FCC intentionally limited the safe harbor to those who "reasonably relied on the *database* when making a particular call" in order to "incent greater usage [of the *RND*], thereby further protecting more consumers from unwanted calls."  33 FCC Rcd. at 12043, ¶ 54 (emphasis added).  In providing a safe harbor solely for callers who, in essence, were misled by the RND into calling the reassigned number, the FCC implicitly determined that callers who called *without* using the RND (like Titlemax) cannot escape liability merely because their intended recipient had consented to receiving calls prior to the reassignment.

Other courts have similarly interpreted the FCC's recent actions as incongruous with a reasonable reliance approach.  See Perez v. Rash Curtis & Assocs., No. 16-cv-03396-YGR, 2019 WL 1491694, at *7 (N.D. Cal. Apr. 4, 2019) (analyzing the FCC's 2018 Order and determining that the narrow safe harbor for RND users "undermin[es] that 'reasonable reliance' represents a 'standard' for dealing with reassigned numbers following ACA International"); see also Orlando Health, 2019 WL 7423512, at *3 n.3 (stating that "the FCC's . . . recent rulemaking efforts [concerning reassigned numbers] also indicate a refusal to create a sweeping reasonable reliance approach").  Accordingly, the Court is not persuaded by Titlemax's argument that the FCC's actions post-ACA International establish a defense for callers of reassigned numbers who relied upon their intended recipient's prior express consent.[6]  Therefore, summary judgment is not warranted on this basis.[7]

---

[6] Nor, therefore, is the Court convinced by the reasoning of the (non-binding) cases Sandoe v. Boston Sci. Corp., No. 18-11826-NMG, 2020 WL 94064 (D. Mass. Jan. 8, 2020) or Roark v. Credit One Bank,

**CONCLUSION**

In sum, the Court finds that neither the text of the TCPA nor the FCC's recent rulemaking supports the creation of a defense or exemption for those who can show that they reasonably relied upon their intended recipient's prior express consent when calling a reassigned number. Accordingly, Defendant Titlemax of Virginia, Inc.'s Motion for Summary Judgment as to the individual claim asserted by Plaintiff Marlene Hylton is **DENIED**. (Doc. 65.)

**SO ORDERED**, this 7th day of November, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

No. 16-173 (PAM/ECW), 2018 WL 5921652 (D. Minn. Nov. 13, 2018), which, according to Titlemax, read the FCC's 2018 Order as establishing a reasonable reliance defense. (See doc. 70, p. 7 ("Many courts have accepted the FCC's rulemaking power in creating a reasonable reliance regime for assessing the potential TCPA liability of a caller who calls a reassigned number.").)

[7] To be clear, the Court need not and, therefore does not, decide whether, in light of the FCC's safe harbor for RND users, the TCPA qualifies as a strict liability statute. Rather, it simply rejects Titlemax's contention that the FCC's post-ACA International rulemaking establishes that a defendant-caller may avoid liability for calling a reassigned number without the called party's consent by showing only that the intended recipient consented to receive calls at the number prior to its reassignment.